**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

DAVID L. OLDEN,                                )
                                               )
            Plaintiff,          )
                                               )
v.                                             )    Case No. CIV-07-453-M
                                               )
MICHAEL J. ASTRUE,                             )
COMMISSIONER OF THE SOCIAL                     )
SECURITY ADMINISTRATION,                       )
                                               )
            Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. David L. Olden, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income (SSI) benefits by the Social Security Administration (SSA). This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that this Court reverse the Commissioner's decision and remand the case for further proceedings.

**I.**    **Agency Proceedings**

Plaintiff protectively filed an application for SSI benefits on September 16, 2002. He filed for DIB the same day, alleging an inability to work since June 16, 1999.[1] *See* Administrative Record [Doc. #13] (AR) at 129-132; 304-305. Plaintiff's applications were denied initially and on reconsideration. AR 27-33; 37-38; 306-309; 310 -313. Following a hearing before an Administrative Law Judge (ALJ), the ALJ found that Plaintiff was not

---

[1]During the administrative hearing, Plaintiff agreed with the administrative law judge (ALJ) that the onset date should be amended to November 1999. AR 340. In his decision, however, the ALJ cited June 16, 1999, as the alleged onset date. AR 19.

disabled. AR 14-23. The Appeals Council denied Plaintiff's request for review, AR 6-8, making the decision of the ALJ the final decision of the Commissioner.

## II. The ALJ's Decision

The ALJ applied the five-step sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 and 416.920. He first determined that Plaintiff had not engaged in substantial gainful activity since June 16, 1999. AR 19. At step two, the ALJ determined that Plaintiff suffers from one severe impairment, bipolar disorder. AR 19. Although Plaintiff alleged disability due in part to back problems, the ALJ found that Plaintiff had no medically determinable back impairment. AR 20. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 20. At step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to understand, remember, and carry out simple job instructions and respond appropriately to work pressure, supervision, and co-workers.

AR 20. The ALJ determined that Plaintiff cannot return to his past relevant work classified as medium in exertion. AR 21. At step five, the ALJ relied on vocational expert testimony and determined that Plaintiff is capable of performing light and sedentary work as a cleaner, laundry sorter, labeler and order clerk and that these jobs exist in significant numbers in the national economy. AR 22. The ALJ found, therefore, that from June 16, 1999, through the

date of the decision, July 26, 2006, Plaintiff was not disabled within the meaning of the Social Security Act.

**III.    Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.    Issues Raised on Appeal**

Plaintiff contends that the ALJ committed legal error in failing to fulfill his duty to properly develop the record, that the ALJ erred in ignoring probative evidence in the medical record, that the ALJ's residual functional capacity assessment is not supported by substantial evidence, and that the ALJ's credibility analysis is legally erroneous and not supported by substantial evidence.

**V.     Analysis**

    **A.     The ALJ's Duty to Develop the Record**

Plaintiff claims the ALJ failed to comply with his duty to develop the record in three respects. First, Plaintiff states that the ALJ failed to obtain any information from him at the administrative hearing regarding the impact of his mental impairments on his ability to work. The record of the hearing supports Plaintiff's contention. The ALJ did not ask specific questions regarding the impact Plaintiff's mental impairments would have on his ability to work, notwithstanding the fact that the ALJ found Plaintiff's bipolar disorder to be severe.

> The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts.

*Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993) (internal quotations and citations omitted; alteration in original). In this case, Plaintiff was not only proceeding *pro se*, but was also appearing telephonically from a county jail at the time of the hearing. AR 329. The participants had difficulty hearing each other, and unidentified speakers cut in on the telephone line prompting Plaintiff to describe the process as "chaotic." AR 333-334. Complicating the communications, Plaintiff did not have a copy of his file and stated he had never seen the file. AR 331. Moreover, most of the ALJ's inquiries appeared to be pertinent, if at all, to the issue of Plaintiff's back. The ALJ's open-ended, non-specific questions such as, "Now, anything else you feel like you need to tell me

. . . anything that would affect your ability to work?," AR 355, were inadequate under the circumstances to satisfy the ALJ's heightened duty to learn Plaintiff's version of the pertinent facts regarding the impact of his mental impairment.

Second, Plaintiff contends that the ALJ erred in failing to obtain medical records detailing the medical care Plaintiff had received during the second of two periods of incarceration.[2] An ALJ must ensure that the record is adequately developed, and, therefore, an ALJ generally has a duty to obtain pertinent medical records that come to his attention during the course of the hearing. *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). In this case, Plaintiff informed the ALJ that he had recently been examined by a doctor who found a tumor in his lower back. AR 330. Plaintiff further testified that he had been incarcerated for the two preceding years. AR 341. The ALJ was thus alerted that any medical records for the last two years would be in the custody of the agency responsible for Plaintiff's healthcare. Further, on April 17, 2006, Plaintiff wrote a letter to the ALJ indicating that he had not received copies of the most recent medical records. AR 125. Plaintiff also informed the Appeals Council of his difficulties in obtaining his most recent medical records. AR 13. The fact that Plaintiff did not specifically ask for help in procuring the medical records in question does not relieve the ALJ of his duty to develop the record.

---

[2]Plaintiff was incarcerated from August 2000 through August 2002, and then from April 2004 at least through the date of the April 5, 2006, hearing. The record contains Oklahoma Department of Corrections medical records from the first period of incarceration, *see* AR 204-232, but the ALJ did not develop the record by obtaining medical records generated during Plaintiff's second period of incarceration.

Finally, Plaintiff contends that the ALJ failed to develop the record regarding Plaintiff's mental impairments. According to Plaintiff, the ALJ should have ordered a consultative mental examination. The Commissioner recognizes that a consultative examination is necessary "when the record is inconclusive or incomplete." Brief in Support of Commissioner's Decision (Commissioner's Brief) at 8 (*citing Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). In this case, the medical expert (ME), John W. Hickman, Ph.D., testified that Plaintiff has had mental health treatment and that he has been diagnosed as having bipolar disorder. AR 332. But the ME also testified that there was no indication in the record that Plaintiff had had a personality assessment. The ME also stated that the record lacked an assessment of Plaintiff's mental status and information about Plaintiff's early development and school experiences. AR 336. On remand, the Commissioner should consider whether a consultative mental examination and additional testing is necessary to fully and fairly develop the record regarding Plaintiff's mental impairments.

### B. The ALJ's Analysis of the Medical Record and RFC Findings

Plaintiff contends that the ALJ erred as a matter of law in failing to consider and discuss significant, probative evidence that conflicted with the ALJ's mental RFC and that the ALJ's RFC findings are, therefore, not based on substantial evidence.

It is well-established that an ALJ may not rely solely on favorable evidence without giving reasons for discounting evidence upon which the ALJ chose not to rely. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (ALJ must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects);

*see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (ALJ may not pick and choose through a medical opinion taking only those parts that are favorable to a finding of nondisability); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that an ALJ must discuss significantly probative evidence he rejects).

Plaintiff contends that the ALJ failed to consider his low Global Assessment of Functioning (GAF) ratings[3] in determining his mental RFC. As the Commissioner points out, a GAF rating is not an absolute determiner of a person's ability to work. *See* Commissioner's Brief at 10 (*citing Stalvey v. Apfel*, No. 98-5208, 2001 WL 50747 at *2, (10th Cir. Aug. 18, 1999) (unpublished op.)). Nevertheless, Plaintiff's consistently low GAF ratings, as outlined in Plaintiff's Opening Brief at 12-13, do suggest serious social and occupational limitations. The Tenth Circuit has stated that "GAF scores of 50 or less do suggest an inability to keep a job." *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. Jul. 17, 2003) (unpublished op.). *See also Simien v. Astrue*, No. 06-5153, 2007 WL 1847205 at *2 (10th Cir. Jun. 28, 2007) (GAF ratings ranging from 41-50 indicate serious impairments in social or occupational functioning) (unpublished op.).

---

[3]The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning" at the time of evaluation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM ") at 30-32. "A GAF score of 41-50 indicates '[s]erious symptoms . . . [ or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Id.* at 34. *See also Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

As Plaintiff notes, the ALJ also ignored Plaintiff's low GAF scores when questioning the vocational expert. The VE answered affirmatively the ALJ's first hypothetical question which contained only physical limitations:

> Let me ask you to assume a hypothetical person of the same age, education, sex, background, training and experience as this claimant. I first want you to assume that this hypothetical person could lift 30 pounds maximum, ten pounds frequently and occasionally stoop. Now, momentarily, with those limitations and no others, I would assume that you would not expect such person to be able to perform the past relevant work of this claimant. Is that true?

AR 356. Considering only these physical limitations and no mental limitations, the vocational expert identified only light and sedentary jobs. AR 357. The ALJ then asked the following question:

> Now, if I go ahead and accept all of the testimony exactly as it's been given and use that as the limitations, what's that going to do to the job base?

The vocational expert stated that an additional limitation "Takes away all jobs." AR 357. It is not clear what additional limitations, physical, mental or both, were considered by the vocational expert in arriving at this conclusion. The ambiguity makes meaningful review of the ALJ's step-five findings impossible.

The ALJ did not address Plaintiff's physical RFC in his decision. The ALJ did state that "[b]ased on the objective medical evidence, the [ALJ] finds that the claimant has no medically determinable back impairment." AR 20.[4] Nevertheless, the ALJ found that

---

[4]Plaintiff testified that he had received medical care for his back while in jail and that "they found a tumor" in his lower back. *See* AR 330. Having failed to fully develop the record by
(continued...)

8

Plaintiff cannot perform his past relevant work as welder, delivery driver and warehouse worker, jobs which, according to the vocational expert, require medium exertion. The ALJ's decision does not indicate that the ALJ believed Plaintiff is precluded from performing his past relevant work because of his mental limitations. Rather, the ALJ's conclusion that Plaintiff cannot perform his past relevant work appears to be based solely on the ALJ's implicit finding that Plaintiff does not have the physical ability to perform work requiring medium exertion:

> The claimant has past relevant work as a welder, delivery driver, and warehouse worker. The vocational expert testified that the claimant's past work was skilled, semi-skilled, and unskilled, and classified as medium in exertion. Accordingly, the claimant is unable to perform his past relevant work.

AR 21. The ALJ's statement that Plaintiff has "no medically determinable back impairment" and the absence of a physical RFC, followed by the ALJ's finding that Plaintiff can no longer perform work requiring medium exertion, make the ALJ's decision internally inconsistent. Given this internal inconsistency, this Court cannot adequately review the ALJ's step four and step five findings. On remand, the Commissioner should consider the series of GAF ratings in determining Plaintiff's mental RFC. Additionally, once the record has been fully

---

[4](...continued)
securing medical records generated during Plaintiff's second period of incarceration, the ALJ did not consider these records. Moreover, the DOC medical records from Plaintiff's first period of incarceration indicate that he was treated for "facet syndrome lower spine" with Naproxen and Prednisone. AR 206, 209.

developed, the Commissioner should formulate a physical RFC and specify the evidence upon which it is based.

### C.     The ALJ's Credibility Analysis

In discounting Plaintiff's credibility, the ALJ stated that Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR 20.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Hackett*, 395 F.3d at 1173 (quotation omitted).  Here, the ALJ's findings are not closely and affirmatively linked to substantial evidence.

The ALJ based his credibility analysis on his observation that Plaintiff's "treating physicians did not place any functional restrictions on his activities that would preclude work activity[.]" The ALJ also found that Plaintiff's "daily activities are consistent with the performance of unskilled work activity."  AR 21.  The ALJ failed, however, to link either of these findings to any evidence in the record.  As to the lack of functional restrictions, the ALJ failed to identify the "treating physicians" to whom he was referring.  The ALJ also failed

to specify the daily activities which he found to be inconsistent with Plaintiff's own description of his limitations. After further development of the record, the Commissioner will necessarily need to reassess Plaintiff's credibility.[5] The Commissioner will have the opportunity to re-assess Plaintiff's credibility in light of a fully and fairly developed record.

In sum, each of the claims Plaintiff has raised requires a remand.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by February  13th , 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[5]As Plaintiff notes, the Commissioner's attempt to justify the ALJ's credibility finding by specifying evidence which might support it, constitutes improper *post hoc* justifications. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (a court should not violate the general rule against *post hoc* justification of administrative action).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   24th   day of January, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE